Mildred K. O'Linn (State Bar No. 159055)
  mko@manningllp.com
Garros Chan (State Bar No. 320561)
  gxc@manningllp.com
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, OFFICER R. MARTINEZ, an individual and Officer of the Azusa Police Department, CITY OF AZUSA, a public entity

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH F. INIGUEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICER R. MARTINEZ, an individual and Officer of the Azusa Police Department; CITY OF AZUSA, a public entity; and DOES 1 to 20,<br><br>    Defendants. | Case No. 2:22-cv-00106 MCS (GJSx)<br>*[District Judge: Mark C. Scarsi;*<br>*Magistrate: Gail J. Standish]*<br><br>**JOINT REPORT OF THE PARTIES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)** |

**TO THE HONORABLE COURT:**

By and through his counsel of record in this action, JOSEPH F. INIGUEZ ("Plaintiff"), and defendants CITY OF AZUSA ("City") and OFFICER R. MARTINEZ (collectively herein after as "Defendants") met and conferred on March 17, 2022, pursuant to Federal Rule of Civil Procedure 26(f), United States District Court, Central District of California Local Rule 26-1, and any applicable Orders of the Court and in order to prepare and submit this Joint Report.

**1.**     **SUBJECT MATTER JURISDICTION.**

Plaintiff has filed federal claims pursuant to 42 U.S.C. § 1983. Accordingly,

the parties do not dispute that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1367 (supplemental jurisdiction). *Cf.* 28 U.S.C. § 1391 (re venue; as all events at issue occurred within the area of the Central District of California, specifically City of Azusa, the parties do not dispute that venue is proper here).

### A. Status of Amendment of Pleadings and Adding of Parties.

The parties are currently unaware of any other natural persons or entities who may need to be added as parties to this action; however, the parties reserve the right to add such parties to the extent permitted under the operative pleading rules. All defendants have Answered the operative Complaint.

## 2. STATEMENT OF THE CASE: SUMMARY OF FACTUAL AND LEGAL CONTENTIONS.

### A. Plaintiff's Factual Contentions.

On December 11, 2021, at approximately 11:40PM, Plaintiff Joseph F. Iniguez ("Mr. Iniguez" or "Plaintiff") and his fiancé, Dale Radford (Radford), were in the drive-thru of the McDonald's location on Alosta Avenue. Upon entering the drive-thru, Plaintiff noticed the interior of their car light up and soon after, Defendant Azusa Police Department ("APD") Officer R. Martinez Number 1140 ("Officer Martinez") approached the driver's side of the car. Officer Martinez asked Mr. Radford if he knew why he was pulled over and then quickly stated that he was able to smell the odor of alcohol from inside the car. Plaintiff advised Martinez that he (Plaintiff) drank earlier in the evening at a wedding reception, Mr. Radford was acting as a designated driver, and any odor of alcohol was from Plaintiff.

Officer Martinez asked Mr. Radford to exit the car and began to ask questions related to a driving under the influence investigation. Plaintiff was aware that the APD does not use body-worn camera or dashboard recording in the patrol car, so Plaintiff exited the car and began to record the interaction with his cell phone to ensure the interaction would be documented. Plaintiff stood near the rear door of the

1  passenger side of the car.  Seconds after Plaintiff started recording, Officer Martinez
2  stated, "My name is Corporal Martinez sir, by all means" while looking in the
3  direction of Plaintiff's camera.

4  Officer Martinez then walked Mr. Radford toward the rear of his patrol car,
5  approximately 20-30 feet from where Plaintiff was standing, and APD Officer Arias,
6  who had arrived on the scene, came to stand within a few feet of Plaintiff. As Officer
7  Arias stayed near Plaintiff, Plaintiff was able to converse with Officer Arias and
8  explained to him that Mr. Radford did the right thing and drove Plaintiff after the
9  wedding.  Officer Arias was receptive to Plaintiff's comments and continued to stand
10 near Plaintiff without incident.

11 Officer Arias told Plaintiff, "You're recording, and you can have whatever
12 evidence you need and stuff from that, ok?"  Plaintiff noticed that Officer Martinez
13 was engaging in a DUI investigation with Mr. Radford, so Plaintiff advised Mr.
14 Radford that he had various rights. Plaintiff told Mr. Radford that he was under no
15 obligation to answer any questions.  Plaintiff explained to Mr. Radford that the officer
16 needed probable cause to arrest him and that if Officer Martinez decided to arrest him,
17 Mr. Radford could challenge the arrest in court.

18 As soon as Plaintiff stated an aspect of Mr. Radford's rights, Officer Martinez
19 placed handcuffs on Mr. Radford and placed him in the backseat of his patrol car and
20 stated, "Alright, I'm going to deal with your friend here." Officer Martinez walked
21 over to Plaintiff and told Plaintiff that he was in public and intoxicated and that
22 Plaintiff would be placed under arrest.  Officer Martinez further stated, "All you had
23 to do was enter the car but you're indicating to me that you're incapable of following
24 simple directions for your safety and the safety of the public. Therefore, you're being
25 placed under arrest for public intoxication." Officer Martinez never asked Plaintiff to
26 enter the car nor did Officer Arias, who was standing near Plaintiff nearly the entire
27 time.

28 It appeared from Officer Martinez's demeanor that Officer Martinez was

frustrated that Plaintiff advised Mr. Radford of his rights. He then arrested Plaintiff without cause for violation of California Penal Code section 647(f) and without probable cause of any other charge. [California Penal Code section 647(f) refers to someone "…Who is found in any public place under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, controlled substance, or toluene, in a condition that they are unable to exercise care for their own safety or the safety of others, or by reason of being under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, or toluene, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way."]

Plaintiff was transported to the APD police station. During the intake process, Plaintiff was asked by an APD jailer as to his sexual orientation; Plaintiff declined to answer out of fear for his safety. Despite having no answer and no such information, the jailer entered Plaintiff's sexual orientation as bisexual. Plaintiff was moved from an intake cell to a cell toward the rear of the jail that was dark, extremely cold, and isolated. Plaintiff did not have shoes or a jacket while in custody; as a result, the cold was oppressive and injurious.

Approximately 60-90 minutes after Plaintiff was placed in the cell, Officer Martinez returned to advise Plaintiff of what happened to Mr. Radford. It was clear from Officer Martinez's physical demeanor that he was attempting to intimidate Plaintiff while he was in the cell. APD Sergeant Sears later visited Plaintiff's cell where he was being held in custody and advised that Plaintiff would not be held for the required six hours and would be released early.

Approximately four hours after Plaintiff's arrest, the jailer walked Plaintiff to the front of the station. As they were walking, APD Sgt. Sears approached and asked the jailer to make sure Plaintiff was able to get a ride home. Officer Martinez then came by while Plaintiff was waiting for his ride in the lobby area and told the jailer that he would wait with Plaintiff.

Officer Martinez told Plaintiff that he and Plaintiff are the same age and that he has been doing police work since he was 21 years old and that he is a Corporal. Plaintiff expressed to Officer Martinez that what happened to Plaintiff that night was inappropriate and that there are avenues of accountability for his actions. Officer Martinez advised Plaintiff that he has "been through IA before" and referenced a false arrest. Officer Martinez's presence near Plaintiff made Plaintiff uncomfortable and as though he was attempting to intimidate Plaintiff. Officer Martinez's actions in the field in arresting Plaintiff as well as his continued interactions with Plaintiff throughout the night were improper and illegal.

Throughout the periods Plaintiff was kept in custody, he was increasingly upset, anxious and distressed; he had done nothing illegal. Plaintiff had been illegally arrested. Plaintiff's conditions of confinement were harsh.

In the aftermath of the arrest, the APD released the fact of Plaintiff's arrest to the public and media. As a result of the release of this information, based on a false and illegal arrest—and the fact that Plaintiff is Chief of Staff to the Los Angeles County District Attorney, the arrest of Plaintiff was reported widely and repeatedly in the press and media. Foreseeably, the media intruded into Plaintiff's life, going to his home and calling his parents and sibling. The extent and falsity of this reporting caused Plaintiff extraordinary shame and embarrassment, emotional and psychological distress and the physical manifestations of such distress and embarrassment.

Mr. Iniguez's emotional and psychological distress and physical injuries include sleeplessness, debilitating anxiety and yet to be diagnosed conditions, all of which continue to this day.

**B.  Defendant's Factual Contentions**.

This case arises out of a police detention incident that occurred on December 11, 2021 in Azusa, California involving Joseph Iniguez and officers of the Azusa Police Department ("AZPD").

On December 11, 2021, at approximately 2335 hours, Cpl. Martinez of the Azusa Police Department observed a black Tesla make an illegal U-turn despite there being a marked sign for no U-turn at the intersection of Calera Ave. and Alosta Ave.

Cpl. Martinez followed the vehicle as the vehicle entered the driveway of a "McDonalds" restaurant located at 980 E. Alosta Ave. Cpl. Martinez turned on his overhead lights to effect a traffic stop and the vehicle continued forward into the drive through line. Due to another vehicle being in front of the Tesla, the vehicle came to a stop in the drive through lane.

Cpl. Martinez exited his patrol vehicle and walked up to the driver's side where he contacted the driver. Cpl. Martinez informed the driver that he stopped him for the above traffic violations.

As the corporal spoke with driver, he smelled an odor of an unknown alcoholic beverage emitting from within the vehicle. Cpl. Martinez asked the driver if he had consumed alcoholic beverages that night. The driver's passenger, later identified as plaintiff Joseph Iniguez, informed the corporal that he was the cause of the odor and he had consumed several alcoholic beverages.

Cpl. Martinez again asked the driver if he had consumed any alcoholic beverages. Iniguez immediately began to question the corporal. The corporal informed Iniguez that he was speaking with the driver and attempting to determine his sobriety. Iniguez continued to interfere with the corporal's investigation of the driver. In an effort to separate the driver from the passenger, Cpl. Martinez requested the driver to step out of the vehicle.

The driver exited the vehicle and Cpl. Martinez attempted to speak with him at the rear of the black Tesla. Just as the corporal began speaking with the driver, Iniguez exited the vehicle and instructed the driver to not answer any of the corporal's questions nor comply with any of the corporal's commands.

Cpl. Martinez informed Iniguez that he just openly admitted to consuming alcoholic beverages and that he was now interfering with the investigation. Cpl.

1  Martinez also informed Iniguez that he was currently in public and intoxicated and
2  that the corporal may have to arrest him for public intoxication.
3        When Ofc. Arias arrived to on scene assist, Cpl. Martinez requested Ofc. Arias
4  to stand with Iniguez while he asked the driver to step to rear of his patrol vehicle in
5  order for Cpl. Martinez to conduct his investigation without interference from Iniguez.
6  The driver agreed and stood by Cpl. Martinez's vehicle when the corporal began to
7  inform the driver the course of his investigation; however Iniguez yelled at the driver
8  that he did not need to listen to the corporal and he did not need to conduct any field
9  sobriety tests.
10       Cpl. Martinez indicated that he agreed with Iniguez and informed the driver
11 that he did not have to conduct any field sobriety tests, however, due to the exhibited
12 signs of intoxication that the corporal observed, Cpl. Martinez did need to conduct an
13 investigation into the driver's sobriety in order to ensure he was able to operate his
14 vehicle safely.
15       Iniguez continued to yell that the driver did not need to conduct the tests. Due
16 to Iniguez continually interfering with the corporal's investigation, Cpl. Martinez
17 handcuffed the driver and placed him in the rear of his patrol vehicle and, thereafter,
18 approached Iniguez.
19       Cpl. Martinez then placed Iniguez under arrest for public intoxication.
20 Subsequently, Iniguez asserted that he was an attorney and told the driver to not to
21 believe anything the officers were saying. Cpl. Chadwick later transported Iniguez to
22 the Azusa Police Department (AZPD) jail for booking and processing.
23       At the time of Iniguez's release, Iniguez told Cpl. Martinez that he falsely
24 arrested him, called Cpl. Martinez "Brady," and stated he would see Cpl. Martinez
25 again.
26     **C.**    **Principal Issues of the Case.**
27       The ultimate issues in this case are currently anticipated to be as follows:
28     1.    <u>§ 1983 Reasonableness of Seizure of Person</u>. Whether, under the totality

of the circumstances known to such officer(s) at the time of the incident, from the perspective of a reasonable peace officer confronted with such circumstances, it was objectively reasonable for the defendant peace officer(s) to restrain, detain, and/or arrest the plaintiff.

2. *Monell* Claim. If a violation of plaintiff's constitutional rights is found to have occurred during the incident at issue, whether defendant City had either: (a) an express policy that was unconstitutional and the proximate cause of the incident constitutional violation; or (b) a long-standing custom or practice that was unconstitutional and the proximate cause of the incident constitutional violation.

3. Compensatory Damages. What, if any, amount of damages plaintiff may be entitled to receive as compensation for plaintiff's alleged injuries.

4. Punitive Damages. Whether, under the totality of the circumstances known to such officer(s) at the time of the incident, defendant police officer(s) acted toward plaintiff with actual malice, oppression, or reckless/deliberate indifference to the exercise of plaintiff's rights.

### D. Operative Claims.

Based on the current pleadings [Dkt. 10], the operative claims are currently as follows:

1. **False Arrest – Fourth and Fourteenth Amendments**, pursuant to 42 U.S.C. § 1983 [First Claim] – by plaintiff JOSEPH INIGUEZ against all defendants;

2. **Retaliatory Arrest – First Amendment Fourteenth Amendments**, pursuant to 42 U.S.C. § 1983 [Second Claim] – by plaintiff JOSEPH INIGUEZ against all defendants; and

3. *Monell* **Liability**, pursuant to 42 U.S.C. § 1983 [Third Claim] – by plaintiff JOSEPH INIGUEZ against defendant CITY OF AZUSA.

### F. Parties And Non-Party Witnesses.

The parties to the action (to date) are as follows:

1. Plaintiff JOSEPH F. INIGUEZ;

  2.  Defendant OFFICER R. MARTINEZ; and

  3.  Defendant CITY OF AZUSA;

The percipient witnesses (to date) are as follows:

  1.  Joseph F. Iniguez;

  2.  Ofc. R. Martinez;

  3.  Dale Radford;

  4.  Cpl. Chadwick; and

  5.  Ofc. Arias.

**3.** **DAMAGES.**

Plaintiff alleges that he suffered injuries as a result of being placed under arrest for public intoxication and resisting, delaying and/or obstructing a law enforcement officer by Officer Martin. Plaintiff seeks general damages, special damages, exemplary damages, punitive damages, costs of suit, and attorneys' fees.

Defendants deny all liability and wrongdoing for any and all of plaintiff's claims.

**4.** **PROPOSED CASE MANAGEMENT SCHEDULE.**

 **A.** **Proposed Case Management Schedule: Discovery, Motions, Experts, Pre-Trial Documents, and Trial.**

The parties request a case management scheduling order with dates and deadlines comparable to the following to the extent feasible in light of the Court's calendar (which has been prepared after careful consultation with the Court's applicable standing and model orders):

| Case Management Event: | Date-Deadline: |
|---|---|
| Initial Disclosures Due per Fed. R. Civ. P. 26(a) | April 25, 2022 |
| Last Day for Hearing for Motions to Amend Pleadings or Add Parties | May 9, 2022 |
| Non-Expert Discovery Cutoff – Last Day to Complete | January 16, 2023 |
| Expert Disclosures Due (initial) | February 27, 2023 |
| Rebuttal-Supplemental Expert Disclosures Due | March 13, 2023 |
| Expert Discovery Cut-Off – Last Day to Complete | March 20, 2023 |

| **Case Management Event:** | **Date-Deadline:** |
|---|---|
| Dispositive Motions/MSJs & Non-Discovery Motion Filing Deadline (*e.g.*, non-discovery motions unrelated to the conduct of trial) | April 3, 2023 |
| Dispositive Motion Hearing Cut-Off – Last Day for Hearing Dispositive/Non-Discovery Motions (MSJs) | May 1, 2023 |
| Last Day to Complete Settlement/ADR | April 17, 2023 |
| Trial Filings (First Round) – Motions *in Limine* Filing Deadline; Last Day to File Bifurcation Motions and other motions regarding the conduct of trial; Parties' Memoranda of Contentions of Fact and Law, Witness List; Joint Exhibit List; and Joint Status Report Regarding Settlement. | June 5, 2023 |
| Trial Filings (Second Round) – Oppositions to Motions in Limine; Joint Proposed Final Pretrial Conference Order; Joint/Agreed Proposed Jury Instructions; Joint Proposed Verdict Forms; Joint Proposed Statement of the Case; and Proposed Additional Voir Dire Questions | June 12, 2023 |
| Final **Pre-Trial Conference**; Hearing on Motions *in Limine* | June 26, 2023 |
| **TRIAL** (Jury Trial) | July 11, 2023 |

The parties acknowledge that the Court may have trial calendar conflicts that prevent adoption of the above proposed dates. In such an event, the parties request that alternate dates be scheduled but, to the extent feasible and at the discretion of the Court and as permissible under the applicable Rules, that the relative sequence of deadlines proposed herein above serve as the template for any scheduling order.

Along these lines, the parties respectfully *request* that, in any modification of the foregoing proposed case management schedule that: (1) non-expert discovery completion deadlines be separated and precede expert discovery deadlines, ideally by around 28 or more days; (2) the expert designation/disclosures deadline fall after the non-expert discovery cut-off; (3) the rebuttal expert disclosures deadline fall about 28-30 days after the initial expert disclosures deadline; (4) the deadline for *filing* motions for summary judgment fall about 28 or more days after the deadline for completing all discovery; (5) the deadline for settlement-mediation completion fall

about 14-28 days after the last day for *hearing* motions for summary judgment; (6) the deadline(s) for filing motions *in limine* and/or pre-trial documents fall about 14-28 days after the settlement completion deadline; and (7) the pre-trial conference/motion *in limine* hearing date fall about 14-28 days before the trial date.

### B. Discovery Plan

The parties will send their respective initial disclosures to each other pursuant to Federal Rule of Civil Procedure 26. Both parties anticipate propounding written discovery concerning the claims at issue – potentially including interrogatories, requests for production, and requests for admission (potentially including requests for authentication or other foundation as to key record/documentary evidence).

The parties anticipate the taking of the **depositions** of plaintiff, plaintiff's deposition of defendants and other involved officers, investigators, Rule 30(b)(6) witnesses, and depositions of percipient witnesses.

The parties stipulated at the request of the noticing party or at the request of the deponent or at the request of the defending party, depositions in this case may be conducted by remote means such as video conference.

Counsel for the parties will meet-and-confer on any discovery issues and any potential Rule 29 stipulations as may be appropriate.

The parties also anticipate that each side (set of opposing parties) will designate 1-10 **experts** on liability and damages issues, potentially including non-retained experts, and that depositions of such experts will also be taken. However, this estimate is not meant to limit the parties and each party reserves their right to call additional experts as appropriate in light of the circumstances and the nature of the claims and defenses at issue. The parties share the understanding that expert discovery is outside of the presumptive limit on the number of depositions.

### 5. ANTICIPATED MOTIONS AND RELATED ISSUES.

At present, the parties are not aware of any motions pending before this Court. However, during the course of litigation of this action, the parties anticipate that the

parties may file the following potential motions:

    Discovery motions, potentially seeking monetary, evidence/issue, and/or terminating sanctions;

    Motion for Judgment on the Pleadings;

    Motion for summary judgment and/or adjudication of the issues, potentially including on the basis of qualified immunity and/or time-bar arising from the operative statutes of limitation;

    Motion for bifurcation of trial on punitive damages issues;

    Motions *in limine*, potentially including *Daubert* motions *in limine*; and

    Other pretrial and/or post-trial motions as may be appropriate.

**6.** **ANTICIPATED PROCEDURAL OR EVIDENTIARY ISSUES.**

Litigation of this matter is still in its very preliminary phases, so the parties cannot yet anticipate all of the legal issues that will arise in this action. However, the parties will endeavor to keep the honorable Court fully informed of such issues during the course of this litigation.

    **A.** **Joint Stipulation for Stay of Civil Proceedings In Lieu of Pending Criminal Investigation.**

The parties have agreed and will submit in concert with this joint report a joint stipulation for a stay of this civil matter in lieu of the Department of Justice's ("DOJ") criminal investigation of plaintiff regarding the same set of facts as this current civil matter pending before this Court. The parties request that the Court stay this matter for a period of 120 days or until either the completion of the pending DOJ criminal investigation, whichever occurs first. Parties agree that a stay in this matter as outlined above would alleviate the parties from having to likely conduct time-consuming discovery motion practice.

    **B.** **Protective Order re Confidential Documents.**

The parties have met and conferred with regards to stipulating to a protective order regarding confidential documents. The parties anticipate entering into a

protective order prior to conducting any discovery by in order to ensure the confidential nature with respect to sensitive documents.

### C. Bifurcation of Punitive Damages.

Defendants propose the following bifurcation of issues for trial:

(1) Phase 1 re Alleged Violation of Rights by Officers During Incident at Issue – Liability and Compensatory Damages (and Punitive Damages predicate);

(2) Phase 2 re Punitive Damages re Defendant Officers (if any) re Calculation; and

(3) Phase 3 re *Monell* Liability (if any).

The parties have not yet reached any agreement on such bifurcation issues.

### 7. SETTLEMENT PROSPECTS AND A.D.R. SELECTION.

The parties have conferred on the prospects for settlement of this matter. However, absent initial disclosures and/or preliminary discovery, the parties contend that it is premature for the parties to properly assess the prospects for resolution of this matter by settlement. Plaintiff and Defendants are agreeable and will stipulate with settlement/ADR procedure No. 2 (**Court Mediation Panel**); specifically the parties request the appointment of Richard Copeland as panel mediator for this case. If Mr. Copeland is unavailable for the appointment as panel mediator, the parties will meet and confer regarding the selection of another panel mediator.

### 8. TRIAL ESTIMATE.

Plaintiff and defendants estimate that trial of this matter should take 5 court days without a *Monell* phase; and 5-9 court days if plaintiff's *Monell*-type claims survive to trial.

### 9. JURY TRIAL STATUS.

In their pleadings on file with the honorable Court, all parties demand a trial by jury in this matter. Accordingly, this action is a jury case.

### 10. TRIAL COUNSEL.

The attorneys who anticipate trying this case on behalf of **Plaintiff** are Glen T.

Jonas of Jonas & Driscoll LLP and Michael H. Artan of Michael H. Artan, Lawyer, APC.

The attorneys who anticipate defending this case at trial on behalf of **Defendants** are lead trial counsel Mildred K. O'Linn and associate trial attorney Garros Chan, both of the law firm of Manning & Kass, Ellrod, Ramirez, Trester, LLP.

**11.     REQUEST FOR USE OF ELECTRONICS AT TRIAL.**

Pursuant to United States District Court, Central District of California Local Rule 83-6.1.5, the parties request a Court Order for authorization for use of certain equipment inside the Courtroom during the trial of the instant action, to the extent that such equipment is not already permitted by operation of any standing order, including wireless communication devices such as smartphones, laptops, tablet computers, and associated electronic equipment and/or supporting carts so as to facilitate efficient presentation and conduct of the trial.

**12.     MAGISTRATE JUDGE.**

Counsel for plaintiff and defendants are discussing the prospect of stipulating that this case be before a magistrate judge. Plaintiff and defendants will advise the Court at a later time if the parties will enter into said stipulation.

**13.     CLASS CERTIFICATION.**

Class certification motion filing deadline is not necessary nor required in this case.

**14.     INDEPENDENT EXPERT OF MASTER.**

The parties do not believe this is a case where the Court should consider appointing a master pursuant to Rule 53 or an independent scientific expert.

///
///
///
///
///

## 15. INSURANCE.

Plaintiff is unaware of any insurance coverage that applies to the damages suffered this matter.

The City of Azusa is insured as a part of a risk management association and through other means.

DATED: March 28, 2022  **MICHAEL H. ARTAN, LAWYER, APC**
**JONAS & DRISCOLL LLP**

By: /s/ Michael H. Artan
Glen T. Jonas
Michael H. Artan
Attorneys for Plaintiff,
JOSEPH F. INIGUEZ

DATED: March 28, 2022  **MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Garros Chan
Mildred K. O'Linn
Garros Chan
Attorneys for Defendants,
OFFICER R. MARTINEZ, an individual and Officer of the Azusa Police Department, CITY OF AZUSA, a public entity